UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No._____

BELLAIRE MULTIFAMILY PROPERTY MANAGEMENT LLC, on behalf of itself and all others similarly situated,

    Plaintiff,

  v.

LYNDON SOUTHERN INSURANCE COMPANY; THE FORTEGRA GROUP, INC.; RESPONSE INDEMNITY COMPANY OF CALIFORNIA; INSURANCE COMPANY OF THE SOUTH; BLUE RIDGE INDEMNITY COMPANY; and LOTSOLUTIONS, INC.,

    Defendants.
_____/

Class Action

**COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF**

Plaintiff BELLAIRE MULTIFAMILY PROPERTY MANAGEMENT LLC, on behalf of itself and all others similarly situated, alleges as follows:

## JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and other members of the proposed plaintiff class are citizens of a State different from one or more of the defendants, and the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

## VENUE

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d), because all defendants are corporations subject to personal jurisdiction in the State of Florida, and the contacts of one or more of the defendants would be sufficient to subject them to personal jurisdiction in this District if this District were a separate State.

## DIVISION

3. Assignment of this action to the West Palm Beach Division is appropriate because the contract at issue was executed in Palm Beach County, Florida.

## PARTIES

4. Plaintiff BELLAIRE MULTIFAMILY PROPERTY MANAGEMENT LLC ("Bellaire" or "Plaintiff") is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business in Dallas, Texas.

5. Defendant LYNDON SOUTHERN INSURANCE COMPANY ("Lyndon Southern" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Jacksonville, Florida.

6. Defendant THE FORTEGRA GROUP, INC. ("Fortegra") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Jacksonville, Florida. Lyndon Southern is a wholly-owned subsidiary of Fortegra.

7. Defendant RESPONSE INDEMNITY COMPANY OF CALIFORNIA ("Response Indemnity") is a corporation organized and existing under the laws of the State of

California, having its principal place of business in Jacksonville, Florida. Response Indemnity is a wholly-owned subsidiary of Fortegra.

8. Defendant INSURANCE COMPANY OF THE SOUTH ("South") is a corporation organized and existing under the laws of the State of Georgia, having its principal place of business in Jacksonville, Florida. South is a wholly-owned subsidiary of Fortegra.

9. Defendant BLUE RIDGE INDEMNITY COMPANY ("Blue Ridge") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Jacksonville, Florida. Blue Ridge is a wholly-owned subsidiary of Fortegra.

10. Defendant LOTSOLUTIONS, INC. ("LOTSolutions") is a corporation organized and existing under the laws of the State of Georgia, having its principal place of business in Jacksonville, Florida. LOTSolutions is a wholly-owned subsidiary of Fortegra.

## FACTUAL ALLEGATIONS

11. Bellaire owns and manages approximately 14 apartment complexes located in Texas.

12. Effective August 1, 2022, Lyndon Southern issued Bellaire a Contractual Liability Insurance Policy For Designated Contracts, Policy Number SDWRS00005, a true and correct copy of which, including all forms and endorsements, is attached hereto as Exhibit A (the "Policy"). The Policy is incorporated by reference as if fully set forth herein.

13. The Policy continues in effect until terminated. The Policy has not been terminated.

14. The Policy was executed on behalf of Lyndon Southern by its agent, RentSense LLC ("RentSense"), at RentSense's offices in Boynton Beach, Florida. RentSense also sells and executes nearly identical policies issued by Response Indemnity, South, and/or Blue Ridge.

15. The Policy provides property owners, property managers, and tenants with an alternative to the traditional requirement that the tenant post a security deposit along with their

first month's rent, which can be a financial obstacle or hardship for many prospective renters. Instead of posting a security deposit, the tenant pays Lyndon Southern a premium equal to 25% of their first month's rent, and the Policy provides Bellaire, the named insured, with coverage for unpaid rent, property damage, and other costs that would otherwise be recoverable from a security deposit, up to an aggregate limit of six weeks of rent payments.

16. As stated in the Policy Declarations:

> Coverage amount is an aggregate amount equal to 6 weeks of rent payments. The aggregate can include, in addition to unpaid rent, $500 in damages caused by lessee, $300 pet damages, $300 in unpaid utilities or $300 in eviction charges, but in no case will the sum exceed the aggregate of 6 weeks of rent payments. RATE: 25% of First Month's Rent per unit.

17. Since the Policy's inception, Lyndon Southern has paid approximately 15 claims filed by Bellaire under the Policy, totaling approximately $30,839.83.

18. The last claim paid by Lyndon Southern under the Policy was Claim No. 009162-1, filed by Plaintiff on January 8, 2024, which Lyndon Southern paid in full, in the amount of $1,627.50.

19. Thereafter, Lyndon Southern abruptly stopped paying any and all claims filed under the Policy. Bellaire has filed over 100 claims under the Policy since Lyndon Southern abruptly stopped paying any and all claims filed under the Policy (the "Claims").

20. In a February 28, 2024 email (Exhibit B), Fortegra's in-house claims adjuster explained the reason for denying the Claims as follows:

> When a tenant moves out, breaks the lease, skips, abandons or transfers to a different rental unit, this is not a covered event under the policy.
>
> For coverage to apply, you must have a writ for the filed eviction with the court, or a signed, dated statement by both parties when the tenant left the premise.
>
> If you have either, please forward.
>
> Otherwise, this claim is closed.

4

21. Bellaire protested that "[t]his is not what was outlined in our policy." (Exhibit B.)

22. In a June 7, 2024 email in response to another Claim (Exhibit C), the same claims adjuster stated:

> Please review the attached claim and request for information letter.
>
> Please send the requested stamped, dated writ for eviction from the court or signed, dated written statement between tenant and complex when they left the premise[s] . . . .

23. The attached June 7, 2024 letter (Exhibit D) from the same adjuster, on the letterhead of LOTSolutions, the administrator of the Policy, reiterated Fortegra's coverage position, stating more specifically that:

> The Waiver Addendum requires one of the following events listed below to have occurred. To complete the review of your claim we need you to provide the following information:
>
> - The Filing of an eviction proceeding in a court of law, with jurisdiction over the matter, by You; or
>
> - The Date You reassumed possession of the Premises following termination of the Lease Contract as a result of either an eviction proceeding, a settlement of an eviction proceeding, or by execution of a written agreement between You and the Tenant, or the Tenant's authorized representative, terminating the Lease Contract.
>
> We are unable to continue our investigation into your claim until we receive this information. Your claim will be in a pending status until this information is received. If we do not receive the requested information in 14 days, we will close your claim.

24. On June 11, 2024, Bellaire emailed the adjuster (Exhibit C) that "[t]he backup documentation you are requesting does not exist and is not what is stated in the policy . . . ."

25. On June 12, 2024, the adjuster responded by email (Exhibit C) that "[l]egal is handling," and "I have no say-so in this."

26. On June 17, 2024, Bellaire received an email (Exhibit C) from the Director of Lender Products Underwriting at Fortegra, attaching a letter (Exhibit E) setting forth its coverage position. In pertinent part, the letter states:

> Thank you for contacting Fortegra regarding the Contractual Liability Policy for Designated Contracts (CLIP) issued through Entrata and RentSense. We have received your email inquiry regarding the required supporting documentation for claims submitted under the above-referenced CLIP. There are approximately 100 open, pending [Bellaire] claims. An acknowledgement letter was returned for each claim detailing the documentation required for LOTSolutions (a Fortegra company) to adjudicate the claim.
>
> The CLIP insures Security Deposit Waiver Addendums (as the "Designated Contract") that are executed between Bellaire Multifamily Property Management LLC and the "Resident". In the claim adjudication process, LOTSolutions first evaluates if there is a "Covered Event" as defined under the waiver and then if that "Covered Event" satisfies the requirements of a "Covered Loss" as defined under the CLIP.

27. Defendants are correct that the term "Covered Event" is defined in the Security Deposit Waiver Addendum (the "SDWA") as follows:

> **G. Covered Event** – The earliest date of occurrence of one of the following:
>
> 1) Filing of an eviction proceeding in a court of law, with jurisdiction over the matter, by **Us** [Bellaire] to evict **You** [the Resident(s)]; or
> 2) Date **We** [Bellaire] reassumed possession of the Premises following termination of the **Lease Contract** [the apartment lease Contract entered into between Bellaire and the Resident(s)] as a result of either an eviction proceeding, a settlement of an eviction proceeding, or by execution of a written agreement between **Us** [Bellaire] and **You** [the Resident(s)], or **Your** authorized representative, terminating the **Lease Contract**.

28. Defendants are *incorrect* that both a "Covered Event" and a "Covered Loss" are required for the payment of claims made under the Policy. The defined term, Covered Event, is used *only once* in the entire Policy. Specifically, the SDWA provides as follows:

> **IV. WAIVER PERIOD; TERMINATION.**
>
> This Waiver will begin on the date the **Lease Contract** is fully executed by **You** and **Us** and will end on the earliest of the following to occur:
>
> . . . B. The date of a **Covered Event**;

29. Accordingly, a Covered Event *terminates* coverage of the associated Lease Contract under the Policy; it is not a requirement or condition precedent to coverage under the Policy.

6

30. The term Covered Loss is defined and limited in the SDWA as follows:

> F. **Covered Loss** – The total **Covered Loss** for a **Lease Contract** is the total of the rent due over the term of the **Lease Contract**, plus any partial month to a maximum of six (6) weeks of rental charges including a maximum sublimit of:
>
> 1) $500 for property damage caused by the Resident(s);
> 2) $300 for pet damage;
> 3) $300 for unpaid utilities; and
> 4) $300 for eviction fees.
>
> K. **Loss Period** – The period of time from the **Resident Default** to the earlier of either the:
>
> 1) End of the term of the **Lease Contract**; or
> 2) An event that otherwise makes future **Benefits** for the **Lease Contract** invalid, such as re-renting of the Premises, or any other reason as set forth by this Waiver.
>
> L. **Resident Default** – You have defaulted on your obligation to make rent payments under the Rental Agreement.
>
> **II. LIMITATIONS**
>
> B. A **Covered Loss** must arise from a **Resident Default** on a **Lease Contract** . . . .

31. As set forth in the preceding paragraph, the Policy provides that "[a] Covered Loss must arise from a Resident Default." There is *no* requirement that a Covered Loss *also* arise from a Covered Event. Instead, a Covered Event *terminates* the Loss Period, which begins with a Resident Default, and continues until "[a]n event that otherwise makes future Benefits for the Lease Contract invalid," including "any other reason as set forth by this Waiver," which includes Section IV. B., quoted in paragraph 28, *supra*. If, as Defendants contend, the Loss Period did not begin until the initiation of eviction proceedings or the execution of an agreement terminating the tenancy – events that *terminate* the Loss Period – the Loss Period would terminate before it began, and the Policy would not provide coverage for *any losses at all.*

32. Accordingly, Defendants' interpretation of the Policy is incorrect, and the refusal to process or pay claims submitted under the Policy without the initiation of eviction

7

proceedings or a written agreement between Bellaire and the tenant terminating their Lease Contract is a breach of the Policy.

33. Defendants have refused to process or pay claims submitted by the other members of the Class (as defined below) on the same grounds.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of itself and a Class, defined as:

> All persons or entities who were issued a Contractual Liability Insurance Policy for Designated Contracts by Lyndon Southern Insurance Company, Response Indemnity Company of California, Insurance Company of the South, or Blue Ridge Indemnity Company in effect at any time since July 3, 2019 (the "Policies").

35. Excluded from the Class are the officers, directors, and employees of any defendant; the members, managers, and employees of RentSense and any other agent of any defendant; any judicial officer presiding over this action, and the members of their immediate family and judicial staff.

36. Certification of the Class is sought pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

37. The Class is so numerous that joinder of all members is impracticable. According to Fortegra, Lyndon Southern offers insurance in 46 states, and is Fortegra's largest insurance company in terms of geographic scope and production.

38. There are numerous questions of fact and law common to the members of the Class which predominate over any questions affecting only individual members, including, without limitation, whether a Covered Event is a requirement or condition precedent to the payment of claims made under the Policies.

39. Plaintiff's claims are typical of the claims of the Class they represent, as Defendants' liability to each member of the Class is predicated on the interpretation of the same provisions of the Policies.

40. Plaintiff will fairly and adequately protect the interests of the Class, as it has no conflict of interest with the other members of the Class, and has retained counsel experienced in class actions and complex litigation.

41. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

42. Defendants have acted on grounds that apply generally to the Class, so that final declaratory relief is appropriate respecting the Class as a whole.

43. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, and there are no unusual difficulties in managing the litigation as a class action.

44. Plaintiff is not aware of any other litigation concerning the controversy, and Class members have not demonstrated any interest in individually controlling the prosecution of separate actions.  Concentration of the litigation in this forum is desirable, as Defendants are based in Florida, and their agent, RentSense, is located in this District.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

45. The allegations of the paragraphs 1-44 are incorporated by reference as if fully set forth herein.

46. Plaintiff has complied with all of its obligations under the Policy, and has fully complied with all of its obligations in submitting the Claims, including, without limitation, the provisions of the Policy concerning Proof of Loss.

47. Defendants have failed and refused, and continue to fail and refuse, to perform obligations required by the terms of the Policies.  Specifically, Defendants have failed and refused to process and pay claims filed without documentation of the initiation of eviction proceedings or a written agreement between policyholders and their tenants terminating their respective leases, in breach of the Policies.

48. As a direct result of Defendants' failure and refusal to perform their obligations under the Policies, Plaintiff and the other members of the Class have been damaged.

## SECOND CLAIM FOR RELIEF
## DECLARATORY RELIEF

49. The allegations of the paragraphs 1-48 are incorporated by reference as if fully set forth herein.

50. An actual controversy exists between, on the one hand, Plaintiff and the other members of the Class, and on the other hand, Defendants, regarding their respective rights and obligations under the Policies. Specifically, Plaintiff, on behalf of itself and the other members of the Class, contends that a "Covered Event," as defined by the Policies, is not a requirement or condition precedent to the payment of claims under the Policies. Defendants contend that a Covered Event is a prerequisite or condition precedent to the payment of claims under the Policies.

51. On behalf of itself and the members of the Class, Bellaire seeks a declaration that a "Covered Event," as defined by the Policies, is not a requirement or condition precedent to the payment of claims under the Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. For an order certifying the Class pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure;
2. For general and compensatory damages according to proof, in excess of $5,000,000;
3. For a declaratory judgment that a Covered Event is not a requirement or condition precedent to the payment of claims under the Policies;
4. For prejudgment interest;
5. For attorneys' fees and costs; and
6. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 3, 2024

\s\ *Jonathan E. Freidin*
Jonathan E. Freidin (Florida Bar No. 98955)
jf@freidinbrown.com
Sarah Glasser (Florida Bar No. 1035935)
SG@freidinbrown.com
Freidin Brown, P.A.
2 South Biscayne Boulevard, Suite 3100
Miami, FL 33131
Telephone: (305) 371-3666

Barry Himmelstein
barry@himmellaw.com
HIMMELSTEIN LAW NETWORK
2000 Powell St., Suite 1605
Emeryville, CA 94608-1861
Telephone: (510) 450-0782
(*Pro Hac Vice Anticipated*)

*Attorneys for Plaintiff Bellaire Multifamily Property Management LLC*